UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br> v. <br> PAUL N. ALDRICH | NO. 5:08-HC-2108-BO |
| UNITED STATES OF AMERICA <br> v. <br> LEROY CONANT | NO. 5:09-HC-2015-BO |
| UNITED STATES OF AMERICA <br> v. <br> GEORGE O. HAMELIN | NO. 5:09-HC-2028-BO |

**OPPOSITION TO PETITIONER'S MOTION TO STAY THIS COURT'S ORDER PENDING APPEAL AND INCORPORATED MEMORANDUM OF LAW**

Previously, the government filed a "Certification of a Sexually Dangerous Person" against respondents. Pursuant to this certificate, the government incarcerated Respondents at FCI-Butner pending further action. On November 18, 2010, this Court dismissed the proceedings and ordered respondents' release within 30 days.

The government moved on December 10, 2010, pursuant to Fed. R. Civ. P 62(c), to stay this Court's order until the conclusion of appellate proceedings in this matter. For the foregoing

1

reasons, respondents oppose this motion and respectfully requests that this Court allow its order to take effect.

## ARGUMENT

**I.     The Fourth Circuit's Stay Order in *Broncheau* does not expressly bind this Court in the present matter**

Respondents acknowledge that the Fourth Circuit Court of Appeals granted a stay of this Court's order pending appeal in *United States v. Broncheau*, No. 5:06-HC-2219-BO, a case raising similar legal issues to the present cases. Respondents note in response only that the *Broncheau* order does not provide binding precedent in the present case and that the legal arguments presented herein demonstrate that this Court's November 18th Order should be allowed to take effect, notwithstanding the Fourth Circuit stay in *Broncheau*.

**II.    The Four Factor Test Compels This Court to Effectuate Its Order**

Respondents agree with petitioner that courts balance four factors to determine whether to grant a stay under Rule 62(c): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Respondents will address each factor in order.

**A. The Government Has Not Shown That it Will Succeed On the Merits of Its Appeal**

The "strong showing" required to compel this Court to indefinitely stay its order pending appeal "is more stringent than the 'reasonable probability' standard that is applicable to an application for a preliminary injunction." *Davis v. Meyers*, 101 F.R.D. 67, 69 (D. Nv. 1984); *see also Bayless v. Martine*, 430 F.2d 873, 879 (5th Cir. 1970) (noting that one needs to make a

2

"stronger showing" than "reasonable probability of success on the merits" in order to obtain the "grant of a stay and the issuance of an injunction pending a hearing on the merits of an interlocutory appeal"). The government must do more, in other words, than simply assert that it might win on appeal, or even that it is reasonably probable that it will win on appeal.

Respondents rely on this Court's carefully crafted November 18, 2010 order to demonstrate that the government is unlikely to succeed on the merits of this appeal.

**B. The Government Has Not Demonstrated Irreparable Injury**

    **1. Petitioner's Facts are Merely Assertions**

In contrast to the government's base assertions, it is not inevitable that these individuals will hurt a member of the public if they are placed into supervised release instead of being incarcerated at FCI-Butner. District courts have noted that a government doctor's assertion that a respondent in a sexually dangerous predator proceeding classified the individual as dangerous does not operate as a rubber stamp. *Brown v. Watters*, 2007 U.S. Dist. LEXIS 53344 at *4-*8, 2007 WL 2127606 at *2-*3 (E.D. WI). Instead, the respondents have the right to challenge these assertions and diagnoses before the state has the right to detain him against his will. *Id.*[1] This Court should not, therefore, simply accept as gospel the assertion that these individuals will commit dangerous sexual acts when determining whether the government has met its burden of demonstrating that it will be harmed by releasing them into supervised release.

---

[1] Respondents note that this case involved a preliminary rulings on jurisdictional issues related to whether the law entitled the civilly committed individual to seek federal habeas corpus relief. The judge did not rule on the merits of the claim. This case demonstrates, however, that courts must look beyond mere assertions by the government–even government professionals and doctors–when deciding whether an individual presents a danger to society.

### 2. Supervised Release Provides the Proper Way to Protect Petitioner's Interest

As this Court's order expressly notes, the government has the opportunity to return to the sentencing courts of each individual and, if it feels that it is appropriate, seek modification of the terms of supervised release.[2] The government's interest, therefore, does not operate as a binary choice between freedom and incarceration for respondent. Instead, when weighing the government's interest, this Court should account for the fact that the government has an exceptionally powerful tool through which to achieve its interest without forcing this Court to stay its order and keep respondents incarcerated under an unconstitutional law.

### C. The Government Understates the Harm a Stay Will Cause Respondents

#### 1. The Liberty Interest

Final resolution of this case on appeal could take over a year. If his release is stayed, respondents will almost certainly spend another year incarcerated, not for a crime, but under a civil law. Any legitimate balancing test under American law cannot hold that a year of a man's life does not weigh extraordinarily heavily on the scales.

The liberty interest that this Court must weigh does not involve "liberty" in the abstract, but real-world, long-term incarceration at a BOP facility. "Loss of Liberty" can mean lots of things under the law– including a restraining order, supervised release, or a five-minute detention imposed by a traffic officer. Incarceration in a Bureau of Prisons institution represents the most severe loss

---

[2]The government might contend that this modification will place an administrative burden on the government. Respondents disagree. As this Court is aware, the government makes such routine requests every day with a minimum of administrative hassle. If, however, the Court accepts this contention, respondents would note that their interest in freedom vastly outweighs the government's interest in administrative convenience.

4

of liberty the federal government can inflict on an individual–reserved almost exclusively for convicted felons.

Respondents do not use the word "incarceration" lightly. As of this writing, *the only difference* between respondents and individuals serving criminal sentences at FCI-Butner is that respondents are not required to work. *In every other respect*, respondents are subject, to not just a loss of liberty, but to incarceration as a prisoner.

### 2. The Interest in Being Free of Undeserved Stigma

Respondents also note, as the courts have, that he has more than a liberty interest at stake. "The stigma associated with being identified and committed as a sexually dangerous mentally ill individual is far greater than either the general mental illness at issue in *Addington* or the residual stigma attached to commitment following an insanity acquittee's successful invocation of the insanity defense." *United States v. Comstock,* Order Granting Dismissal at 55, (5:06-hc-02195-BR, Doc. No. 32)(September 7, 2007).

Right now, respondents suffer this stigma through confinement as a certified "Sexually Dangerous Person." They will continue to suffer this stigma for the year or more that they are incarcerated at FCI-Butner, despite the fact that the petition has been dismissed and there is nothing other that the government's untested assertions that such certification is necessary. In the real world (which is where the stigma matters), the fact that an un-effectuated order exists dismissing the certification means very little. Friends, family, and community members all will note that respondents are at FCI -Butner, find out the reasons why, and place an undeserved stigma on respondents.

### 3. Recent Example From Minnesota District Court

Finally, a district court in Minnesota recently, while deciding upon a preliminary injunction, held that a convicted sex offender suffered "considerable harm" from police officers routinely visiting his home to make sure that he was complying with registration requirements. *Doe v. LaDue*, 514 F. Supp. 2d 1131 (D. Minn. 2007). In other words courts recognize that, an individual, living at home in freedom but subject to recurring 4th Amendment violations, presents a very strong case for suffering substantial harm–even when weighed against the government's interest in keeping the community safe from persons convicted of a sexually violent crime. As noted above, respondents here do not have only a Fourth Amendment interest at stake. They has fundamental liberty and reputation interests that go beyond Fourth Amendment interests.

### D. The Public Interest Lies In Effectuating The Order

District courts who have confronted this question understand that ascertaining the "public interest" when determining whether to subject suspected sex offenders to civil deprivation of Constitutional rights requires balancing multiple concerns:

> As the fourth factor, the court considers the public interest. [The government] argue[s] that because of the high risks of recidivism posed by predatory offenders, there is strong public interest in continuing [its] proactive compliance practices. The court acknowledges that there is great public interest in monitoring predatory offenders. However, there is an equally strong public interest in preserving constitutional rights. Because the [government] has a means of monitoring predatory offenders without jeopardizing constitutional rights . . .the greater public interest is in issuing an injunction to protect plaintiffs' constitutional rights.

*LaDue*, 514 F. Supp at 1138 (internal citation omitted).

In the present case, the government "has a means of monitoring [alleged] predatory offenders without jeopardizing constitutional rights" –supervised release. This solution, available to

the government if it chooses to use it, considers both the public interest in safety and the public interest in constitutional rights.

**III.     Conclusion**

For the foregoing reasons, respondents object to petitioner's motion to stay the effectuation of this Court's order pending appeal. Respondents request a hearing in this matter if this Court deems it helpful or necessary.

Respectfully requested this 15th day of December, 2010.

>/s/ Thomas P. McNamara
>THOMAS P. McNAMARA
>Federal Public Defender
>Attorney for Respondents
>Office of the Federal Public Defender
>150 Fayetteville Street
>Suite 450, Wachovia Capital Center
>Raleigh, North Carolina 27601
>Telephone: 919-856-4236
>Fax: 919-856-4477
>E-mail: Thomas_McNamara@fd.org
>N.C. State Bar No. 5099
>LR 57.1 Counsel Appointed

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

| | |
|---|---|
| **G. Norman Acker, III** | **Michael D. Bredenberg** |
| **Edward D. Gray** | **Michael E. Lockridge** |
| **R.A. Renfer, Jr.** | Federal Medical Center |
| **Joshua B. Royster** | P. O. Box 1600 |
| **Seth Morgan Wood** | Butner, NC 27509 |
| U.S. Attorney's Office | Email: mbredenberg@bop.gov |
| 310 New Bern Ave., Suite 800 | Email: mlockridge@bop.gov |
| Raleigh, NC 27601-1461 | |
| Email: norman.acker@usdoj.gov | |
| Email: edward.gray@usdoj.gov | |
| Email: rudy.renfer@usdoj.gov | |
| Email: joshua.royster@usdoj.gov | |
| Email: seth.wood@usdoj.gov | |

by electronically filing the foregoing with the Clerk of Court on December 15, 2010, using the CM/ECF system which will send notification of such filing to the above.

This the 15th day of December, 2010.

                                                          /s/ Thomas P. McNamara
                                                         THOMAS P. McNAMARA
                                                         Federal Public Defender
                                                         Attorney for Respondents
                                                         Office of the Federal Public Defender
                                                         150 Fayetteville Street
                                                         Suite 450, Wachovia Capital Center
                                                         Raleigh, North Carolina 27601
                                                         Telephone: 919-856-4236
                                                         Fax: 919-856-4477
                                                         E-mail: Thomas_McNamara@fd.org
                                                         N.C. State Bar No. 5099
                                                         LR 57.1 Counsel Appointed