```
1                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NORTH CAROLINA
2                         WESTERN DIVISION

3


4   UNITED STATES OF AMERICA,      )
                                   )
5                                  )
                    PETITIONER,    )
6                                  )

7          VS                      ) CASE NO. 5:09-HC-2015-BO

8                                  )
                                   )
9   LEROY LEMONT CONANT,           )
                                   )
10                  RESPONDENT.    )

11

12

13

14                         STATUS CONFERENCE

15                          JUNE 22, 2011

16              HONORABLE TERRENCE W. BOYLE, PRESIDING

17


18
    APPEARANCES:
19
         MR. MICHAEL JAMES
20       ASSISTANT UNITED STATES ATTORNEY
         310 NEW BERN AVENUE
21       RALEIGH, NC   27601
         (FOR THE GOVERNMENT)
22
         MR. SETH WOOD
23       ASSISTANT UNITED STATES ATTORNEY
         310 NEW BERN AVENUE
24       RALEIGH, NC   27601
         (FOR THE GOVERNMENT)
25
```

```
1    APPEARANCES:  (CONT.)

2          MR. CARL YOUNGER
             ATTORNEY AT LAW
3          4140 PARKLAKE AVENUE
             SUITE 200
4          RALEIGH, NC 27612
             (FOR THE RESPONDENT)
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    SHARON K. KROEGER, COURT REPORTER
       MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION
```

```
 1                  THE COURT:  YOU ARE MR. YOUNG?

 2                  MR. YOUNGER:  YES, SIR.  MR. YOUNGER, CARL

 3       YOUNGER.

 4                  THE COURT:  YOUNGER.  I AM SORRY.  IT'S NOT

 5       WRITTEN DOWN.

 6                  MR. YOUNG:  HERE ON BEHALF OF MR. BLAKE; YES,

 7       SIR.

 8                  THE COURT:  Y-O-U-N-G-E-R?

 9                  MR. YOUNGER:  YES, SIR.  LIKE A YOUNGER

10       BROTHER OR SISTER.

11                  THE COURT:  RIGHT.  AND YOU WANTED TO HAVE A

12       STATUS CONFERENCE ON THIS.  THIS IS A CASE THAT WAS IN

13       THE FOURTH CIRCUIT WITH THE BRONCHEAU CASES AND WAS

14       REMITTED BACK UNDER THE PROCEDURES AT YOUR REQUEST;

15       RIGHT?

16                  MR. YOUNGER:  CORRECT.

17                  THE COURT:  ARE YOU SEEKING A TRIAL DATE?

18                  MR. YOUNGER:  I THINK WE ARE SEEKING A TRIAL

19       DATE, AND IN CONSULTATION WITH THE U.S. ATTORNEY ALSO, I

20       GUESS, A DISCOVERY SCHEDULE.  WE WOULD LIKE TO HAVE IT AS

21       QUICK AS POSSIBLE, BUT WE HAVE TALKED WITH HIM AND

22       I THINK WITH YOUR APPROVAL, WE KIND OF HAVE A FRAMEWORK

23       SET UP THAT WE CAN GO BY.

24                  MR. JAMES:  THAT'S CORRECT, YOUR HONOR.  AND

25       GOOD AFTERNOON, JUDGE.
```

1        THE COURT:  GOOD AFTERNOON.

2        MR. JAMES:  YOUR HONOR, WHEN WE SPOKE WITH

3   COUNSEL LAST WEEK, WITH MR. YOUNGER AND WITH MR. BLAKE,

4   AND WE TALKED ABOUT THE POSSIBLE DATES FOR DISCOVERY IN

5   WHICH THE GOVERNMENT'S DISCLOSURE WOULD BE DUE BY AUGUST

6   22.  THE RESPONDENT'S DISCLOSURE WOULD BE DUE BY OCTOBER

7   21.  THERE WOULD THEN BE A PERIOD OF BETWEEN 30 OR 60

8   DAYS PERIOD FOR ANY ADDITIONAL DISCOVERY, AND THAT WOULD

9   ALLOW US TO DO DEPOSITIONS OF EXPERTS AND SO FORTH, AS

10  THIS COURT IS WELL FAMILIAR WITH, AND WE COULD HAVE A

11  TRIAL DATE IN EARLY DECEMBER.

12        THE COURT:  WELL, THAT IS ALL GOOD, AND I AM

13  NOT HERE TO TAKE ISSUE WITH THAT.  BUT I CAN TELL YOU

14  WHAT IS GOING ON WITHOUT IT BEING ESTABLISHED YET.  IF

15  YOU READ -- AND I AM SURE YOU HAVE -- THE CONCURRENCE IN

16  BRONCHEAU, AND THE MAJORITY OPINION IN BRONCHEAU, THE

17  COURT OF APPEALS IN THAT CASE -- AND IT'S A PUBLISHED

18  CASE -- IS ABSOLUTELY LAYING DOWN THE LAW ABOUT THE FACT

19  THAT YOU CAN'T DETAIN PEOPLE WITHOUT HAVING THEM IN FRONT

20  OF A JUDICIAL OFFICER AND JUDGE WYNN GOES TO GREAT

21  LENGTHS TO SHOW THE COMPARABLE CIVIL COMMITMENT ISSUES IN

22  CASES THAT THE SUPREME COURT HAS SAID, AND PRETTY MUCH

23  SAYS THERE IS A BRIGHT LINE, THAT IF YOU KEEP SOMEBODY 45

24  DAYS, YOU HAVE VIOLATED THEIR CONSTITUTIONAL RIGHTS

25  WITHOUT HAVING THEM BROUGHT IN FRONT OF A JUDICIAL

1    OFFICER.

2              AND OF COURSE, VIRTUALLY EVERY ONE OF THE

3    100-PLUS CASES VIOLATES THAT STANDARD IF THAT IS THE

4    STANDARD, AND I KNOW BRONCHEAU DIDN'T AMOUNT TO MUCH, BUT

5    THE CRITICISM THAT I READ IN IT ISN'T THAT -- I MEAN,

6    IT'S THAT IT WAS DONE THE WRONG WAY, BUT THE CRITICISM

7    WAS THAT WHY DIDN'T YOU JUST GO AHEAD AND RULE THE WHOLE

8    THING UNCONSTITUTIONAL.  YOU TRIED TO JURYRIG A WAY TO

9    KEEP IT CONSTITUTIONAL AND TO SAVE IT WHEN THE MAJORITY

10   OPINION SAYS IF YOU HAD JUST GONE AND DONE WHAT YOU

11   SHOULD HAVE DONE AND HELD IT UNCONSTITUTIONAL, WE WOULD

12   HAVE A DIFFERENT CASE IN FRONT OF US.

13             AND I SAY THAT BECAUSE I REALLY THINK AND

14   BELIEVE THAT THAT IS THE CALCULUS THAT IS GOING ON IN THE

15   APPELLATE COURT, AND HERE WE ARE TALKING ABOUT, WELL, HE

16   HAS NEVER BEEN IN FRONT OF A JUDICIAL OFFICER FOR A

17   HEARING AND OPTIMISTICALLY JULY, AUGUST, SEPTEMBER,

18   OCTOBER, NOVEMBER, DECEMBER, WE ARE TALKING ABOUT FIVE

19   MORE MONTHS.  AND DO YOU SEE MY CONCERN?

20             MR. JAMES:  I DO, YOUR HONOR, AND I DO

21   APPRECIATE THE COURT'S CONCERN.  WE BELIEVE THAT THE

22   FRAMEWORK THAT WE ARE JUST PROPOSING TO THE COURT

23   OBVIOUSLY WOULD NOT STOP THE COURT FROM ENGAGING IN

24   FURTHER STATUS CONFERENCES TO ENSURE THAT WE ARE, IN

25   FACT, MAKING OUR DEADLINES.

1          NOW, OUR DISCLOSURES, IF THE COURT WERE TO

2    ACCEPT IT, WOULD BE DUE BY AUGUST 22, BUT OBVIOUSLY IF

3    OUR DISCLOSURES ARE DONE PRIOR TO THAT, THEY GO AS SOON

4    AS POSSIBLE TO COUNSEL FOR THE RESPONDENT.  AND IF

5    COUNSEL FOR THE RESPONDENT FINISHES THEIR --

6          THE COURT:  WHAT I AM TRYING TO SAY IS THAT

7    THERE IS A DISCONNECT IF YOU READ THE APPELLATE OPINIONS

8    BETWEEN WHAT WE ARE DOING HERE, HANDS ON, IN DISTRICT

9    COURT, AND WHAT THEY THINK SHOULD BE HAPPENING.

10          SOMEHOW, THEY THINK THAT EVERY CERTIFIED

11   PERSON NEEDS TO BE PRESENTED LIVE IN FRONT OF A JUDGE FOR

12   A PROBABLE CAUSE TYPE HEARING, AND THAT HASN'T HAPPENED

13   IN ANY CASE.

14          MR. JAMES:  THAT IS CORRECT.  THAT HAS NOT

15   HAPPENED IN ANY OF THE CASES.

16          THE COURT:  BUT THEIR CRITICISMS ARE WHY ISN'T

17   THE DISTRICT JUDGE DOING THIS?  YOU KNOW, WHAT ARE THESE

18   JUDGES DOING DOWN THERE?  WHY DON'T THEY GIVE THESE

19   PEOPLE DUE PROCESS IF THEY ARE BEING HELD ARBITRARILY FOR

20   DAYS AND WEEKS AND MONTHS AND YEARS?  AND THEY ARE ACTING

21   LIKE WE ARE SITTING ON OUR HANDS.

22          MR. JAMES:  YOUR HONOR, I DO UNDERSTAND THAT,

23   AND AS THE COURT WELL KNOWS, THE -- MOST OF THESE DELAYS

24   ARE BASED ON THE LITIGATION THAT HAS ENSUED.

25          THE COURT:  BUT THAT IS NOT -- THAT IS THE

1    REAL PROBLEM WE ARE DEALING WITH, BUT THEY DON'T

2    RECOGNIZE THAT PROBLEM AT ALL, AND THEY ARE ACTING LIKE

3    SOMEBODY HAS BEEN PICKED UP OFF THE STREET AND HELD FOR

4    MORE THAN 45 DAYS AND IT'S AN UNCONSCIONABLE DUE PROCESS

5    VIOLATION.  THAT THERE IS NO OTHER SITUATION WHERE YOU

6    CAN PLUCK A PERSON OFF THE STREET AND HOLD THEM FOR MORE

7    THAN 45 DAYS WITHOUT VIOLATING THEIR RIGHTS.

8              THAT IS THE WAY I READ THE MAJORITY AND

9    CONCURRENT OPINION.

10             MR. JAMES:  RIGHT.  WELL, JUDGE, OBVIOUSLY, WE

11   WILL ABIDE BY WHATEVER SCHEDULE THE COURT SETS.  WE WERE

12   JUST MAKING A PROPOSAL THAT WE THOUGHT WOULD BE

13   SUFFICIENT.

14             THE COURT:  YES.  WHAT DO YOU THINK ABOUT IT?

15   DO YOU WANT TO GO TO DECEMBER 1?

16             MR. YOUNGER:  I THINK ON BEHALF OF MY CLIENT,

17   WE WANT TO DO SOMETHING AS QUICK AS WE CAN.  AND I AM IN

18   PART RELYING ON COUNSEL'S HELP IN THIS MATTER AND TRYING

19   TO SET FORTH WHAT CAN GO BACK AND FORTH AND ADEQUATE TIME

20   FOR THAT TO HAPPEN.

21             BUT THE SHORT OF IT IS WE WANT IT TO HAPPEN AS

22   QUICK AS WE CAN BECAUSE WE FEEL AS IF THE COURT HAS

23   ALREADY ADDRESSED --

24             THE COURT:  WELL, ARE YOU GOING TO USE DR.

25   ARNOLD AND DR. DEMBY IN EVERY ONE OF YOUR CASES?

1          MR. JAMES:  NO, JUDGE.

2          THE COURT:  BECAUSE THAT WOULD MAKE IT EASY IF

3     YOU ARE GOING TO USE THEM IN EVERY ONE OF YOUR CASES, YOU

4     DON'T NEED ANY TIME.  THEY ARE GOING TO BE READY, YOU

5     KNOW, TOMORROW.

6          MR. JAMES:  JUDGE, I CAN SAY THAT THEY WILL BE

7     THE DOCTORS IN THIS CASE.

8          THE COURT:  DO YOU HAVE OTHER DOCTORS THAT ARE

9     LOOKING AT PEOPLE?

10          MR. JAMES:  YES, JUDGE, WE DO.  IN FACT, ON

11     THE WOODEN CASE, THE OUTSIDE EXPERT IS DR. MALNICK.  THE

12     B.O.P. EXPERT IS DR. HEATHER ROSS.  SO THERE ARE OTHER

13     DOCTORS.  I BELIEVE YOU WILL SEE DR. DEMBY IN MANY OF THE

14     REAL EARLY CASES THAT CAME ABOUT BECAUSE SHE WAS DOING

15     THE MAJORITY OF THOSE CASES FOR BUREAU OF PRISONS AT THAT

16     TIME.

17          BUT AS TIME GOES ON, YOU ARE GOING TO SEE

18     DIFFERENT B.O.P. EXPERTS AS WELL AS OTHER OUTSIDE

19     EXPERTS.

20          THE COURT:  WELL, THE PROBLEM IS THAT NONE OF

21     THE OTHER CASES EXCEPT BRONCHEAU AND TIMMS WENT UP, AND

22     THAT WAS LOST IN SPACE.  AND BRONCHEAU WENT UP AND THEY

23     VENTED ABOUT HIM, AND THERE AREN'T ANY OTHER CASES THAT

24     ARE GETTING TO THE COURT OF APPEALS, AND THEY ARE NOT

25     GOING TO GET TO THE COURT OF APPEALS OTHER THAN IF I DO

1    SOMETHING BECAUSE I DON'T THINK ANYBODY ELSE IS PUTTING

2    THINGS IN A CRITICAL POSTURE SO THAT THEY COULD GET

3    APPELLATE REVIEW.

4              MR. JAMES:  THAT'S CORRECT, I THINK.

5              THE COURT:  PRETTY MUCH COMMON SENSE TRUE.

6    AND SO THIS DAM IS GOING TO BUILD UP AND THEN A YEAR OR

7    TWO FROM NOW, THEY ARE GOING TO GET THEIR HANDS ON A CASE

8    AND THEY ARE GOING TO GO, OH, MY GOSH, I CAN'T BELIEVE

9    THIS.  THIS GUY HAS BEEN HELD FOR SEVEN YEARS AND HE

10   HASN'T HAD A HEARING.  AND THEY ARE GOING TO BE IN SHOCK

11   AND OUTRAGE.

12             MR. JAMES:  WE WILL ABIDE BY WHATEVER SCHEDULE

13   THE COURT LAYS OUT, JUDGE.

14             THE COURT:  WELL, I THOUGHT YOU WERE -- THE

15   WHOLE POINT IN GETTING HIM CUT OUT OF THE BRONCHEAU PACK

16   WAS THAT YOU COULD GET A HEARING.

17             MR. YOUNGER:  I THINK THAT IS THE IDEA.  THAT

18   IS THE GOAL.

19             THE COURT:  YOU CAN HAVE A SEAT.  I AM JUST

20   GOING TO LOOK AT HIS CERTIFICATION.  SO HE WAS CERTIFIED

21   JANUARY 7, '09.  SO THAT WAS ALL OF '09, ALL OF '10; AND

22   30 MONTHS NOW AND UP UNTIL NOW.

23             MR. YOUNGER:  THAT IS MY UNDERSTANDING AS

24   WELL.

25             THE COURT:  AND HE WAS IN COURT ONE TIME WITH

1  MR. BLAKE WHEN I DID A STATUS ROUND IN THE FALL OF 2010?

2          MR. YOUNGER:  I THINK THAT IS CORRECT, AND

3  THEN I THINK AS YOU INDICATED, HE WAS WITH THE GROUP AND

4  HE CAME BACK OUT.

5          THE COURT:  THAT WAS OCTOBER '09?

6          THE RESPONDENT:  OCTOBER OF '09, I BELIEVE,

7  YES.

8          THE COURT:  HOW OLD IN 2009 WAS THE

9  STEPDAUGHTER WHO WAS COMPLAINING ABOUT BEING TOUCHED BACK

10 WHEN SHE WAS 11 TO 15?

11         MR. YOUNGER:  SHE WAS 15.

12         THE COURT:  SHE WAS 15 THEN?

13         MR. YOUNGER:  YES.

14         THE COURT:  OKAY.  AND THOSE CHARGES NEVER

15 WENT TO COURT?

16         MR. YOUNGER:  NO.

17         THE COURT:  THERE WASN'T EVEN AN INDICTMENT.

18 IT WAS JUST AN INQUIRY.

19         MR. YOUNGER:  THAT'S CORRECT.

20         THE COURT:  WHAT WAS HIS -- WHEN HE WAS

21 CERTIFIED, WHAT WAS HIS STATIC-99?

22         MR. YOUNGER:  I DO NOT KNOW.

23         THE COURT:  IT SAYS THAT HE HAD A STATIC-99.

24 DO YOU KNOW WHAT YOUR SCORE WAS?

25         THE RESPONDENT:  NO, YOUR HONOR.  I NEVER NEW

1   WHAT THE SCORE WAS.

2               THE COURT:  OKAY.  HOW MANY YEARS OF

3   SUPERVISED RELEASE DID YOU HAVE?

4               THE RESPONDENT:  THREE.

5               THE COURT:  AND THAT -- YOUR RELEASE DATE WAS

6   IN JANUARY OF '09?

7               THE RESPONDENT:  FEBRUARY 3 OF '09.

8               THE COURT:  '09.  HAVE YOU GOT A STATIC-99 ON

9   HIM NOW, MR. YOUNGER?

10              MR. YOUNGER:  I BELIEVE THAT'S CORRECT.

11              THE COURT:  NO.  DO YOU HAVE ONE?  HAVE YOU

12  GOTTEN ONE UP?

13              MR. YOUNGER:  I AM NOT SURE, YOUR HONOR.  I

14  DON'T BELIEVE SO.

15              MR. JAMES:  YOUR HONOR, I BELIEVE THAT THE --

16  ONCE WE RECEIVE THE INITIAL DISCLOSURES FROM B.O.P. THAT

17  WOULD CONTAIN THE MATERIAL THAT THE COURT IS ASKING FOR

18  ABOUT THE UPDATED STATIC-99.

19              WITH REGARD TO WHETHER HE HAS WORKED ONE UP,

20  HE WOULD HAVE HAD TO OBTAINED HIS OWN EXPERT TO DO THAT,

21  TO PERFORM THAT SORT OF TEST.  THAT NORMALLY WON'T BE

22  DONE UNTIL ONCE WE PROVIDE THEM WITH THE DISCLOSURES.

23  WHAT THE NORMAL PROCESS HAS BEEN, THEN COUNSEL WOULD THEN

24  PROVIDE THAT MATERIAL TO THE EXPERT THAT THEY WOULD ASK,

25  THAT THEY WOULD SEEK TO EMPLOY IN THE CASE.

1   AND THEN THAT EXPERT WOULD REVIEW THAT

2   MATERIALS AND THEN DO THEIR STATIC-99 OR WHATEVER OTHER

3   TESTS THAT THEY WOULD DO.  AND THAT IS SORT OF WHY WE ARE

4   TRYING TO LAY OUT THE POSSIBLE SCHEDULE THE WAY IT WAS,

5   BECAUSE IT DOES TAKE TIME.

6   THE COURT:  IT SEEMS TO ME FROM THE TWO TRIALS

7   I HAVE DONE THAT WE ARE MAKING THIS MORE EXOTIC THAN IT

8   IS.  BASICALLY ANYBODY CAN SCORE THE STATIC-99.  YOU LOOK

9   AT THE CATEGORIES AND YOU DECIDE YOU GET A POINT OR YOU

10  DON'T GET A POINT.  YOU GET TWO POINTS OR YOU DON'T.  IF

11  YOU ARE 70 YEARS OLD, YOU KNOCK A COUPLE OF POINTS OFF.

12  IT'S NOT ROCKET SCIENCE.  IT'S PRETTY EASY.

13  AND THEN YOU COME UP WITH A WORKING NUMBER , A

14  5, A 6, A 7.  IF IT'S A 2 OR 1, YOU ARE PROBABLY NOT

15  HERE.

16  MR. JAMES:  WELL, THAT MAY OR MAY NOT BE SO IN

17  TERMS OF WHAT HAPPENS WITH THE SCORING, JUDGE, BUT IN

18  ORDER TO DO ALL OF THAT, THEIR COUNSEL WILL HAVE TO HAVE

19  THE INITIAL DISCLOSURES.  THE BUREAU OF PRISONS IS

20  GATHERING THAT MATERIAL FOR US NOW.

21  THE COURT:  BUT HOW HARD IS IT.  I MEAN, THEY

22  COULD STAMP ON THE OUTSIDE OF THE GUY'S JACKET, STATIC-99

23  SCORE, 7; STATIC-99 SCORE, 10; STATIC-99 SCORE, 3; AND

24  YOU WOULD KNOW IF YOU WERE TALKING ABOUT A PROBABLY GOING

25  TO LOSE OR PROBABLY GOING TO WIN CASE.

1      MR. JAMES:  THAT MAY BE SO, JUDGE, BUT I THINK

2  MOST OF THE -- AS THE COURT KNOWS, IN MOST OF THESE

3  CASES, HAVING TRIED TWO OF THESE CASES, YOUR HONOR, YOU

4  KNOW, THAT THEY ALSO EMPLOY EITHER OTHER --

5      THE COURT:  BUT THAT SEEMS TO BE THE GOLD

6  STANDARD.  THAT IS THE BRIGHT LINE YOU ARE LOOKING FOR

7  AND PRETTY MUCH IF YOU ARE ON THE LOW SIDE OF 5, YOU ARE

8  NOT GOING TO BE THERE.  IF YOU ARE 5 OR ABOVE, YOU ARE

9  GOING TO BE THERE.

10      MR. JAMES:  THAT IS A POSSIBILITY, JUDGE.

11  THAT IS CORRECT.  BUT AGAIN, I WOULD JUST SAY THEY WOULD

12  NEED THE MATERIAL TO ACTUALLY DO THE SCORING, AND B.O.P.

13  IS TRYING TO GATHER THAT MATERIAL FOR US.

14      THE COURT:  I KNOW.  BUT B.O.P. HAD TO SCORE

15  HIM BECAUSE IN JANUARY OF '09 THEY REFERENCE AN INITIAL

16  ASSESSMENT OF HIS USING TWO ACTUARIAL RISK ASSESSMENT

17  INSTRUMENTS, STATIC-99 AND RAPID RISK WAS CONDUCTED.

18  WHAT IS THE BIG SECRET?  WHY NOT JUST TELL THEM WHAT IT

19  IS?

20      MR. JAMES:  AS SOON AS WE HAVE THAT

21  INFORMATION, WE, OF COURSE, WILL PROVIDE IT, AND AS THE

22  COURT WELL KNOWS, THEY DO UPDATE THESE THINGS FROM THE

23  DATE OF THE CERTIFICATION TO THE DATE THAT THEY TURN OVER

24  THE MATERIAL TO US AS WELL.

25      THE COURT:  OKAY.  WELL, WHAT DO YOU SAY ABOUT

1    THEIR SCHEDULE OF AUGUST 22, OCTOBER 21 AND DECEMBER 1?

2              MR. YOUNGER:  I AM RELYING ON THEM WHEN THEY

3    SAY THEY HAVE TO HAVE 60 DAYS TO GET THAT MATERIAL TO US,

4    AND I WILL TAKE THAT.  WE DO WANT IT AS QUICK AS

5    POSSIBLE.  ONE OF THE THINGS WE TRIED TO SAY IS THAT WE

6    COULD PROVIDE OUR DISCLOSURES OR, YOU KNOW, REPORTS IN A

7    SHORTER PERIOD OF TIME, BUT PRIOR TO --

8              THE COURT:  HOW ABOUT IF I SET IT FOR TRIAL

9    THE WEEK OF SEPTEMBER 19 AND EVERYONE CAN RETROFIT THEIR

10   SCHEDULES FOR DISCOVERY TO MAKE THAT WORK.  IN OTHER

11   WORDS, I DON'T REALLY CARE HOW MUCH DISCOVERY YOU HAVE.

12   ALL I CARE ABOUT IS THAT YOU COME TO TRIAL AND YOU CAN

13   WORK OUT THE DISCOVERY HOWEVER YOU WANT.

14             AND IF YOU DON'T GET ANY DISCOVERY, THAT IS

15   FINE.  GO GET YOUR EXPERT.

16             MR. YOUNGER:  I THINK THAT COULD BE DONE, TOO.

17             THE COURT:  SO WE'LL PUT IT ON THE FOR THE

18   WEEK OF SEPTEMBER 19, AND YOU CAN MAKE YOUR DISCLOSURES

19   AND DO YOUR DISCOVERY, WHATEVER YOU WANT.  AND THAT GIVES

20   HIM JULY, AUGUST, SEPTEMBER, THREE MONTHS, 90 DAYS TO GET

21   READY, AND MR. BLAKE SAID HE WANTED TO GO TO TRIAL, SO --

22             MR. YOUNGER:  THAT IS WHAT WE WANT TO DO.

23             THE COURT:  OKAY.  WE'LL SET IT FOR THAT WEEK.

24   AND IF YOU WANT TO SUBMIT SOME OBJECTIONS TO THINGS, I

25   WILL RULE ON THEM.  BUT I DON'T SEE THAT IT PROFITS ME TO

1    TRY TO NEGOTIATE TIMES AND THINGS LIKE THAT.

2            MR. YOUNGER:  OKAY.

3            THE COURT:  OKAY.

4            (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

5

6

7

8

9                  CERTIFICATE

10

11        THIS IS TO CERTIFY THAT THE FOREGOING

12    TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

13    DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

14    THE SHORTHAND NOTES, CONSISTING OF THE WHOLE THEREOF, OF

15    THE PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

16    TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

17        DATED THIS 29TH DAY OF AUGUST, 2011.

18

19

20                        /S/ SHARON K. KROEGER
                                  COURT REPORTER

21

22

23

24

25